# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LISA COLEMAN,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

_______________________________/

Case No. 2:26-cv-00424-TLN-SKO

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, THAT THE COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT BE GRANTED, AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED

(Docs. 9 & 11)

14-DAY DEADLINE

## I. INTRODUCTION

Plaintiff Lisa Coleman ("Plaintiff") seeks judicial review of a final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On September 4, 2026, this case was reassigned to the undersigned. (*See* Doc. 18.)

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, the Commissioner's cross-motion for summary judgment be granted, and the final decision of the Commissioner be affirmed.

## II. BACKGROUND

On January 16, 2024, Plaintiff protectively applied for DIB payments, alleging she became disabled on April 5, 2011, due to morbid obesity; chronic pain due to trauma; fibromyalgia; cervicocranial syndrome; radiculopathy in the cervical region; migraines; insomnia; chronic gastroesophageal reflux disease (GERD), diabetic nephropathy associated with diabetes mellitus, post-traumatic stress disorder (PTSD); and recurrent major depressive disorder. (Administrative Record ("AR") 17, 71, 81, 92, 95, 245.)

Plaintiff was born in 1982 and was 34 years old on the date last insured. (AR 40, 71, 81, 92.) Plaintiff has a high school education and previously worked at Walmart. (AR 22, 25, 40, 246, 247.)

### A. Relevant Evidence of Record[3]

In June 2011, Plaintiff presented for a physical therapy consultation following an attack by her roommate in April. (AR 1148–52.) She complained of pain in her neck and jaw. (AR 1149.) Diagnostic imaging of her cervical spine and mandible performed at that time was normal. (AR 1150.) Upon examination, Plaintiff had a normal gait and normal neurological testing. (AR 1150–51.) The provider noted that she was "not a good candidate for manual therapy" due to significant tenderness, guarding, and emotional lability. (AR 1151.) They further noted that "[a]lthough [Plaintiff] has multiple subjective worrisome complaints, her central and segmental neuro testing is normal." (AR 1151.) That same month, Plaintiff reported that her neck pain and spasms had improved, and she was able to perform yard work for one to two hours. (AR 1146.)

Plaintiff had a CT of her cervical spine performed in December 2011, which was normal. (AR 1271–72.) In March 2013, Plaintiff reported that she "can't do anything" because of her neck pain. (AR 1729.) In April 2013, it was noted at a behavior health appointment that Plaintiff was

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

taking her medication as prescribed and responding without side effects. (AR 1724.)

In August 2013, Plaintiff underwent a psychological consultative examination. (AR 317–23.) She complained that she is in "constant pain" and "very fearful." (AR 320.) Plaintiff reported that she takes care of her vegetable garden in her backyard and plays with her dogs and walks them daily. (AR 320.) She also reported that she does household chores, cooks, dresses, and bathes herself, and she enjoys arts, crafts, movies, and cooking. (AR 320.) According to Plaintiff, she got along with family, friends, and neighbors. (AR 320.) Her mental status examination was normal. (AR 320–21.) Later that same month, Plaintiff presented at a follow up appointment for treatment of pain. (AR 1700–1702.) She reported that she can walk for exercise and care for herself. (AR 1700.)

An MRI of Plaintiff's cervical spine performed in March 2014 showed mild reversal of normal cervical lordosis but was a "nondiagnostic examination due marked artifact." (AR 731.) Another cervical spine MRI performed in May 2014 was unremarkable. (AR 730, 1673.) That same month, Plaintiff reported at a behavioral health appointment that she was having a better response to medication but was experiencing sleepiness. (AR 1675.) Her appearance was clean and appropriate, with congruent mood, normal speech, and coherent thought processes. (AR 1675.)

In June 2014, Plaintiff reported that her medication helps keep her calm but interferes with her sleep. (AR 1670, 1672.) Her medication was changed. (AR 1671.) A mental status examination was normal, with pleasant demeanor, intact memory, speech, and mentation. (AR 1671.) In February 2015, Plaintiff reported that she was feeling better with good mood and she had been able to care for herself and her pet. (AR 1651.) She indicated that her medications were working well and helping her pain with no side effects, and that no medication change was needed. (AR 1651.)

Plaintiff reported that she had been providing her aunt and uncle, with whom she lived, with ongoing assistance and wanted to look into receiving benefits for her services in September 2015. (AR 1640.) She also requested assistance with seeking suitable employment and requested resources from the State Department of Rehabilitation. (AR 1640–41.)

In February 2016, a CT scan of Plaintiff's abdomen showed no acute osseous abnormality of the bones and soft tissues. (AR 483–88.) In April 2016, an abdominal MRI performed in April

2016 showed grossly stable visualized osseous structures. (AR 475–79.) Plaintiff presented to the emergency department in July 2016 complaining of right knee pain. (AR 883–85.) An x-ray of Plaintiff's right knee was negative. (AR 883–84.)

Plaintiff presented for a pain management consultation in September 2016. (AR 354.) She reported that she could bathe herself, clean the house, converse meaningfully, cook, dress herself, feed herself, find her way home, live independently, recognize familiar faces, remember the current date, remember her own name, remember where she lives, and ride public transportation but not drive. (AR 356.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 3, 2024, and again on reconsideration on February 13, 2025. (AR 17, 107–16, 123–30.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 131–71.) At the hearing on October 7, 2025, Plaintiff appeared by telephone with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 52–66.) A Vocational Expert (VE) also testified at the hearing. (AR 67–69.)

**1. Plaintiff's Testimony**

At the hearing, Plaintiff testified that her neck and back pain have gotten worse during the relevant period.[4] (AR 55–56.) She also alleged she has fibromyalgia. (AR 56.) She testified she had injections for her neck and back and received chiropractic treatment but never underwent surgery. (AR 56.) Plaintiff testified that the medial branch block injections for her neck pain were helpful until 2019. (AR 57, 63.) According to Plaintiff, during the relevant period her neck pain radiated into her arm causing numbness and tingling sensation in her arm. (AR 66.)

Plaintiff testified that during the relevant period she experienced headaches two to four times per week that would last from six hours to days. (AR 63.) When experiencing headaches, she would have to lay down. (AR 63.) She testified she took prescription medications that reduced the severity of headache pain until 2020-2021. (AR 58–60.)

Plaintiff treated her PTSD with medication and therapy during the relevant period. (AR 62.)

[4] The relevant period is defined as April 5, 2011, through December 31, 2016. (AR 17, 41.)

She testified she had panic attacks daily and needed to have her service dog with her. (AR 64.)

**2. Vocational Expert's Testimony**

The ALJ asked the VE to consider a person of Plaintiff's age and education, with no past work. (AR 67.) The VE was also to assume this person could perform light work with the following additional limitations: they are precluded from all ladder, rope and scaffold climbing, and all dangerous work hazards exposure, which includes unprotected heights and exposed moving machinery; they are limited to performing the remaining postural motions occasionally; they are limited to having occasional exposure to extreme heat, humidity and cold conditions and occasional exposure to concentrated pulmonary irritants; they are limited to moderate noise work environments; they are limited to routine simple type of work tasks, that is, work that would not require a production quota type-pace (like an assembly line environment where someone's work impacts work down the line); they are limited to having only occasional required work interactions with coworkers, supervisors, and the public; and they are required to have a work setting allowing for some off task behavior of up to 3% of the workday. (AR 67.) The VE testified that such a person could perform light exertional jobs in the national economy such as router clerk, Dictionary of Operational Titles (DOT) code 222.687-022, with a specific vocational preparation (SVP)[5] of 2; mail clerk, DOT code 209.687-026, with an SVP of 2; and office helper, DOT code 239.567-010, with an SVP of 2. (AR 67–68.)

Considering a second and third hypothetical, where a person would have the same limitations as the first but also needing to briefly change positions every 30 minutes throughout the workday and limited to occasional overhead reaching and frequent forward reaching and handling tasks, the VE testified the previously identified jobs were available. (AR 68.) According to the VE, considering a fourth hypothetical where the individual needed extra breaks lasting up to 30 minutes at a time twice a day, there would be no jobs in the national economy available. (AR 68.)

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

**C. The ALJ's Decision**

In a decision dated October 17, 2025, the ALJ found that Plaintiff was not disabled, as defined by the Act, during the relevant period. (AR 17–41.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19–41.) The ALJ decided that Plaintiff last met the insured status requirements of the Act on December 31, 2016, and she had not engaged in substantial gainful activity from April 5, 2011, the alleged onset date, though the date of last insured of December 31, 2016 (step one). (AR 19.) At step two, the ALJ found Plaintiff's following impairments to be severe through March 31, 2019: thoracolumbar spine disorder; cervical spine disorder with left shoulder symptoms; asthma; diabetes mellitus; headaches; obesity; depression; dissociative disorder; and PTSD. (AR 19–20.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21–24.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[6] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC

> to perform a full range of light work as defined in 20 CFR [§] 404.1567(b), except as follows. [Plaintiff] was precluded from all ladders, ropes, and scaffolds climbing, and all dangerous work hazards exposure, which includes unprotected heights and exposed moving machinery, and [Plaintiff] was limited to performing the remaining postural motions occasionally. [Plaintiff] was limited to occasional exposure to extreme heat, humidity, and cold conditions, and occasional exposure to concentrated pulmonary irritants. [Plaintiff] was limited to a moderate noise work environment. [Plaintiff] was limited to routine, simple work tasks, work not requiring a production quota pace (i.e., assembly line environment where one's work impacts work down the line), and work involving only occasional required work

---

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> interactions with coworkers, supervisors, and the public. [Plaintiff] would have been off task up to 3% of workday due to momentary symptom distractions.

(AR 24–39.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 26.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy, specifically router clerk, mail clerk, and office helper (step five). (AR 40–41.) The ALJ concluded Plaintiff was not disabled at any time from April 5, 2011, the alleged onset date, through December 31, 2016, the date last insured. (AR 41.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 16, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective symptom complaints and did not include her need for a service dog in the RFC. (Docs. 9, 16.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermines the credibility of Plaintiff's allegations of disabling symptoms and limitations and that the purported need for a service dog was not required to be incorporated in the RFC. (Doc. 11.) The undersigned agrees with the Commissioner.

### A. The ALJ Properly Found Plaintiff Less Than Fully Credible

#### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[7] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could have reasonably been expected to produce the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 26.) In view of this

[7] The undersigned rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 11 at 4 n.1.)

finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff argues, citing Ninth Circuit authority, that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. 9-1 at 4 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *see also* Doc. 16 at 2–4.) However, in *Lambert*, the Ninth Circuit held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277.

Moreover, the ALJ here did not merely provide a summary of the medical evidence. Unlike in *Lambert* (and *Brown-Hunter*), the ALJ here detailed Plaintiff's allegations of "pain to the degree that she could not work anymore," including "neck pain radiating into her shoulder and arm" causing her arm to become "numb and tingly"; "headaches 2 to 4 times a week" that last "from 6 hours to days at a time" and require that she sometimes "lay in a quiet and dark room"; and "panic attacks" that she experienced "almost daily." (AR 25.) The ALJ then contrasted that testimony with opposing evidence from the medical record showing normal objective findings and testing; control of symptoms with treatment; and performance of certain daily activities (AR 29–30, 32–33). *Cf. Brown-Hunter*, 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence). The identification of specific allegations and reasons why the evidence undermines those allegations—described in further detail below–permits the undersigned to review the ALJ's reasoning. Plaintiff's argument is therefore unavailing. *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Cooper v. Kijakazi*, No. 20-15935,

2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing.").

The undersigned finds that the ALJ identified at least three specific reasons supported by substantial evidence for discrediting Plaintiff's testimony:

a. <u>Objective medical evidence</u>

First, the ALJ found that Plaintiff's "multiple subjective complaints," including that she "could not do anything because of her neck pain" and experienced "daily panic attacks," are inconsistent with the objective medical evidence. (AR 29–33.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680, 681 (9th Cir. 2005). *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999). Further, "[w]hen objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ observed that during the relevant period, neurological findings and objective

testing of Plaintiff's neck, jaw, knee, and abdomen were all normal or unremarkable and thus not "consistent with the severity of pain alleged." (AR 29–30 (citing AR 475–79, 483–88, 730, 731, 883–84, 1150–51, 1271–72, 1673).) According to the ALJ, the medical record also showed normal gait and normal mental status examinations, with clean and appropriate appearance, congruent mood, normal speech, coherent thought processes, pleasant demeanor, and intact memory, speech, and mentation. (AR 29, 33 (citing AR 320–21, 1150, 1675, 1671).)

Plaintiff does not dispute this evidence, which is supported by the record. The undersigned therefore finds the ALJ's conclusion that the evidentiary record does not support, and in fact, undermines Plaintiff's subjective statements, is supported by substantial evidence. The ALJ's determination that Plaintiff's complaints are inconsistent with the objective medical evidence during the relevant period is a clear and convincing reason for discounting her subjective symptom testimony. *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence); *Molina*, 674 F.3d at 1113 (same); 20 C.F.R. § 404.1529(c)(3).

b. <u>Control of symptoms</u>

Second, the ALJ found that Plaintiff's course of treatment undermined her subjective symptom allegations. Specifically, the ALJ noted Plaintiff's reports that her medications were helping her pain and keeping her calm with no side effects. (AR 30, 33 (citing AR 1146, 1651, 1670, 1672, 1675, 1724).) In evaluating a claimant's claimed symptoms, an ALJ may find a claimant less credible when their symptoms can be controlled by treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v); *see also Morgan*, 169 F.3d at 599 (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

Plaintiff does not contest the ALJ's finding that her symptoms improved with treatment during the relevant period. Instead, she asserts in her reply brief that the ALJ cannot rely on such finding because they failed to show that such treatment "was capable of providing lasting relief," citing *Tritchler v. Berryhill*, No. 5:18-CV-00047-MAA, 2018 WL 6443119, at *5 (C.D. Cal. Oct. 3, 2018).

(Doc. 16 at 3–4.) In *Tritchler*, the medical record showed that the plaintiff's pain relief from treatment was "short-lived" and she was considered a candidate for surgery despite the treatment, suggesting the treatment was "not effective." *Tritchler*, 2018 WL 6443119, at *5. Here, Plaintiff points to no evidence showing that her medications provided only temporary relief or that she was recommended more invasive treatment for her symptoms. The undersigned therefore finds that the ALJ's conclusion that Plaintiff's improvement with treatment is inconsistent with her testimony as to the severity of impairments during the relevant period is supported with substantial evidence in the record. The ALJ's discounting Plaintiff's subjective symptom testimony in light of her symptom improvement is therefore another clear and convincing reason for doing so. *Bunnell*, 947 F.2d at 346; *Morgan*, 169 F.3d at 599; *Odle*, 707 F.2d at 440.

c. Daily activities

Third, and lastly, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's "functional activities of daily living" undermined her allegations of "constant pain and fearfulness" and "back pain" during the relevant period (AR 29–30, 33, 38; *see also* AR 25 (summary of Plaintiff's hearing testimony).). Specifically, the ALJ noted Plaintiff's hearing testimony that she has radiating neck pain causing numbness and a tingling sensation in her arm, and she experiences headaches two to four times per week that last from six hours to days, requiring her to lay down. (AR 25.) The ALJ also pointed out statements made by Plaintiff to providers during the relevant period, including that she "could not do anything because of her neck pain" and that she was in "constant pain" and "very fearful." (AR 29, 33 (citing AR 320, 1729).) These subjective complaints, according to the ALJ, were undermined by Plaintiff's ability to take care of her vegetable garden; play with her dogs and walk them daily; do household chores; cook, dress, and bathe herself; perform yard work; enjoy arts, crafts, movies, and cooking; get along with family, friends, and

neighbors; walk for exercise; live independently; ride public transportation; and care for her aunt and uncle.[8] (AR 29, 30, 33 (citing AR 320, 356, 1146, 1640, 1651, 1700).)

Plaintiff does not dispute these activities, which she described in her reports to providers and at the hearing. Instead, she again criticizes the ALJ for not specifying how her activities are inconsistent with her subjective complaints. (*See* Doc. 9-1 at 7–8; Doc. 16 at 4–5.) However, the undersigned finds that no greater level of specificity is warranted in this case. In *Ferguson v. O'Malley*, 95 F.4th 1194 (9th Cir. 2024), on which Plaintiff primarily relies, the ALJ "did not explain how, in his view, [the claimant's] testimony about [his] daily activities is inconsistent with his testimony about the severity and frequency of his headaches . . . . [a]nd no reasonable inference that such an inconsistency exists." *Id.* at 1200. Unlike *Ferguson*, it can be reasonably inferred here that Plaintiff's performance of regular daily activities, such as bathing, cooking, doing household chores, walking her dogs, using transportation, and caring for her aunt and uncle, is, on its face, inconsistent with her allegations that she is in constant fear and debilitating pain such that she "could not do anything" and must lay down due to headaches between six hours to days at a time for up to four times per week during the relevant period. *See, e.g., Anderson v. Dudek*, No. 24-1266, 2025 WL 972975, at *1 (9th Cir. Apr. 1, 2025) ("Anderson running and working 15 to 20 hours per week was inconsistent with her testimony that her headache symptoms were so bad that she was 'in bed for about half of every week.' And Anderson working up to 20 hours per week was inconsistent with her testimony that her headaches rose to a migraine level, which rendered her incapable of working, three times or more per week. By citing these specific facts, the ALJ demonstrated that Anderson was in less pain than she claimed and properly rejected the severity of her headache testimony.") (internal citations omitted). *See also Kaufmann v. Kijakazi*, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (the

---

[8] The ALJ also noted that Plaintiff sought "suitable employment" through the Department of Rehabilitation during the relevant period (AR 30), which suggests that she believed herself capable of full-time work. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding oneself out as available for full-time employment is inconsistent with disability allegations).

plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

In sum, the undersigned finds that the ALJ provided at least three clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of her impairments during the relevant period.[9]

**B. Plaintiff Has Not Shown Her Alleged Need for a Service Dog Was Medically Necessary**

Finally, Plaintiff asserts that the ALJ harmfully erred by failing to consider and incorporate her need for a service dog in the RFC assessment. (Doc. 9-1 at 8–9.) The undersigned disagrees. "[A] number of district courts in the Ninth Circuit and elsewhere have held that an ALJ must consider a claimant's use of a service animal in the RFC assessment if there is evidence that the service animal is 'medically necessary.'" *Beth Louise G. v. Comm'r of Soc. Sec.*, No. CV 24-115-M-KLD, 2025 WL 2717810, at *7 (D. Mont. Sept. 24, 2025) (collecting cases). Here, Plaintiff relies on her own testimony that she "had a service dog even to do simple things like check the mail." (AR 23; *see also* AR 64.) She does not point to any evidence in the medical record to establish medical necessity, such as a prescription or recommendation by a provider. *See, e.g., Santos v. Colvin*, No. 3:12-CV-05827-KLS, 2013 WL 5176846, at *5 (W.D. Wash. Sept. 12, 2013) (recommendation by the plaintiff's doctor evidence that use of a service dog was medically necessary for the plaintiff to work). "Absent

[9] Moreover, Plaintiff has not shown that any error in the consideration of her subjective complaints would be harmful. The ALJ expressly noted that they "[did] not discount all of [Plaintiff's] complaints." (AR 39.) Despite bearing the burden of proving her disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional functional limitations resulting from her alleged impairments during the relevant period were not accounted for in the ALJ's RFC assessment or otherwise identify how the ALJ's purported error was not inconsequential to the ultimate nondisability determination. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). *Cf. Ruth F., v. Comm'r of Soc. Sec.*, No. C20-5603-MAT, 2021 WL 3772067, at *5 (W.D. Wash. Aug. 25, 2021) ("[A]ny error in the ALJ's evaluation of Plaintiff's subjective testimony would be harmless because the ALJ accounted for Plaintiff's alleged exertional limitations in the RFC.").

evidence that Plaintiff's service dog was medically necessary, the ALJ was not required to consider her alleged need for a service dog when evaluating her RFC." *Beth Louise G.*, 2025 WL 2717810, at *8; *see Payano v. Colvin*, No. 2:15-CV-00294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017) ("Any failure to inform the vocational expert of the mere fact of having a properly-designated service dog was harmless error" where there was no "assessment that the dog is necessary for Plaintiff to work"). *Cf. Cecilia M. v. Saul*, No. 18CV2362-WQH-MDD, 2019 WL 6917984, at *4 (S.D. Cal. Dec. 19, 2019) (finding it was error for the ALJ to incorporate the option to have a companion dog into the RFC where there was no evidence of a 'significant benefit' due to a companion dog or an acceptable medical source prescription or recommendation). The undersigned therefore finds the ALJ did not err in failing to consider Plaintiff's alleged need for a service dog in formulating the RFC for the relevant period. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (In making the RFC determination, an ALJ is not required to take into account those limitations they find to be unsupported by the record).

## V. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 9) be DENIED;
2. The Commissioner of Social Security's cross-motion for summary judgment (Doc. 11) be GRANTED;
3. The final decision of the Commissioner of Social Security be AFFIRMED; and
4. The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Lisa Coleman, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations

pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 8, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE